IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| HEATHER DE MIAN, | ) |
|    Plaintiff, | ) ) ) |
| v. | )   Cause No. 4:18-cv-01680-AGF |
| CITY OF SAINT LOUIS, MISSOURI, et al. | ) ) ) |
|    Defendants. | ) ) |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION**
**TO DEFENDANTS' MOTION TO DISMISS**

      Plaintiff Heather De Mian is a well-known independent journalist who suffers from a connective tissue disorder and relies on a wheelchair for mobility. ECF Doc. 16 at ¶ 62. During the incident described in the Complaint, she was also easily identified as a member of the press because she was wearing a press neck lanyard and using a tripod for live streaming. *Id*. On September 29, 2017, Plaintiff attended a peaceful protest near Busch Stadium in downtown St. Louis. *Id.* at ¶ 33. Plaintiff witnessed officers from the St. Louis Metropolitan Police Department ("SLMPD") use force unnecessarily and without warning against an elderly clergyman and another protestor. *Id*. at ¶¶ 47-53.

      In response to the unwarranted escalation by the police, many people exercised their First Amendment rights to ask why officers committed violent, unconstitutional acts against fellow protestors. *Id.* at ¶ 49.  Incensed, Defendant William Olsten, an SLMPD officer, attempted to goad protestors into a fight, hoping they would "come and fuck [him] up then." *Id*. at ¶¶ 55, 57. When no one took the bait, Defendant Olsten moved towards the protestors and two officers had to attempt to calm him and move him away from those gathered. *Id.* at ¶ 55. His anger unabated, Defendant Olsten pulled out a large canister of pepper spray. *Id.* at ¶ 59. His supervisor, Defendant

1

John Hayden, stood five feet away from Defendant Olsten. *Id.* at ¶ 56. Defendant Olsten was not attempting to escape a dangerous situation, as he was never in danger. *Id.* at ¶ 58.

Without warning and for no reason, Defendant Olsten pepper sprayed Plaintiff and other citizens in the face. *Id.* at ¶ 61. Plaintiff had not committed any criminal acts, and Defendant Olsten made no attempt to arrest Plaintiff or the other citizens he sprayed. *Id.* at ¶ 63. Instead of protecting Plaintiff, Defendant Hayden recorded the incident on his cellphone. *Id.* at ¶¶ 56, 67. Defendants Olsten and Hayden are collectively referred to as "Defendant Officers."

## ARGUMENT

In evaluating a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court must accept all facts pleaded by the plaintiff, and the reasonable inferences therefrom, as true in determining whether the plaintiff's action states a plausible claim for relief on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *U.S. v. Any & All Radio Station Transmission Equip.*, 207 F.3d 458, 462 (8th Cir. 2000). Plaintiff's Amended Complaint ("Complaint") states a plausible claim for relief on its face, and the Defendants' Motion should be denied in full.

**I.    Plaintiff's Complaint Should Not be Stricken Under Fed. R. Civ. P. 8 or 12(f).**

The Court may strike a pleading, in full or in part, if it contains "redundant, immaterial, impertinent, or scandalous" matters. Fed. R. Civ. P. 12(f). No such grounds exist. Defendants claim that they are unable to determine which counts of the Complaint are alleged against each Defendant. ECF Doc. 23 at 3. However, each count specifically states whether it is against all defendants or all individual defendants. Any confusion as to who is being sued is disingenuous.

Additionally, Defendants argue that paragraphs 30-31 of the Complaint violate Rule 408(a) of the Federal Rules of Evidence. This is irrelevant as Plaintiff has not sought admission of any evidence in this case. Defendants do not offer any authority for their curious claim that it is improper to reference in a Complaint a prior injunction and settlement. Moreover, at the pleading stage, Plaintiff is required to make factual allegations that, coupled with any reasonable inferences

2

drawn therefrom, establish a plausible claim for relief. *Iqbal*, 556 U.S. at 678. Paragraphs 30-31, 68-71, and 72-76 relate to Plaintiff's *Monell* claim against Defendant City of St. Louis ("the City") and support the reasonable inference that the City has a custom of using excessive force against citizens, which resulted in Plaintiff's injuries.[1] Paragraphs 14-18 and 20-21 set forth the facts underlying Plaintiff's exercise of her First Amendment rights, as violations of those rights are at issue in this cause. While they cast Defendants in a bad light, the paragraphs in dispute are not "redundant, immaterial, impertinent, or scandalous." The paragraphs allege facts upon which Plaintiff states claims for relief. Therefore, the paragraphs should not be stricken under Rule 12.

Defendants also argue that the Complaint should be dismissed under Fed. R. Civ. P. 8. The standard for dismissing a Complaint under Rule 8 is persistent violations that "demonstrate the total obfuscation of the pleading…(where) it is impossible for any party or court to understand plaintiff's alleged claim or damage" and make it impossible for the Defendants to "intelligently" file a response. *Koll v. Wayzata State Bank*, 397 F.2d 124, 126 (8th Cir. 1968). In reality, Plaintiff intentionally pleaded a detailed Complaint so as to clearly establish the circumstances and actions that are important in this case. More importantly, Defendants are speaking out of both sides of their mouths. Defendants complain here that Plaintiff pleaded too much information and later complain that Plaintiff did not plead sufficient facts regarding the City's *Monell* liability. The main reason for detailing this history is precisely to establish the custom and practice of SLMPD to violate the civil rights of its citizens.

## II. Plaintiff Pleaded Sufficient Facts to State a Plausible Claim for Municipal Liability Under *Monell*.

A plaintiff may establish municipal liability under § 1983 by proving that his or her constitutional rights were violated by an "action pursuant to official municipal policy" or misconduct so pervasive among non-policymaking employees of the municipality "as to constitute

---

[1] In ECF Doc., Defendants request that Paragraphs 67-70 be stricken. We believe they meant paragraphs 68-71.

a 'custom or usage' with the force of law." *Monell v. Department of Soc. Serv.*, 436 U.S. 658, 691 (1978). A municipality has "custom liability" under *Monell* when the plaintiff establishes:

> (1) The existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees;
> (2) Deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and
> (3) The plaintiff['s] injury by acts pursuant to the governmental entity's custom, i.e., [proof] that the custom was the moving force behind the constitutional violation.

*Ware v. Jackson Cty., Mo.*, 150 F.3d 873, 880 (8th Cir. 1998) (citations omitted).

The Eighth Circuit has recognized, however, that prior to discovery a plaintiff "may not be privy to the facts necessary to accurately describe or identify" the policies or customs which caused the deprivation of their constitutional right. *Sagehorn v. Indep. Sch. Dist. No. 728*, 122 F. Supp. 3d 842, 867 (D. Minn. 2015) (quoting *Doe ex rel. Doe v. Sch. Dist. of City of Norfolk*, 340 F.3d 605, 614 (8th Cir. 2003)). Thus, the Court has held a plaintiff is not required to identify the full scope of an alleged custom or policy to survive a motion to dismiss. *Id.* A plaintiff need only include "allegations, reference or language from which one could *begin to draw* an inference that the conduct complained of resulted from an unconstitutional policy or custom." *Teague v. St. Charles Cty.*, 708 F. Supp. 2d 935, 940 (E.D. Mo. 2010) (citing *Crumpley–Patterson v. Trinity Lutheran Hosp.*, 388 F.3d 588, 591 (8th Cir. 2004) (emphasis added).

Further, a municipality is liable under *Monell* for failure to train its employees when its failure evidences a deliberate indifference to its residents' constitutional rights, and the training deficiencies caused the deprivation of the plaintiff's constitutional rights. *Ulrich v. Pope County*, 715 F.3d 1054, 1061 (8th Cir. 2013) (citing *Andrews v. Fowler*, 98 F.3d 1069, 1076 (8th Cir. 1996)). Similarly, a municipality is liable under *Monell* for failure to supervise its employees when its failure evidences a deliberate indifference to or tacit authorization of violations of residents' rights, and the plaintiff's constitutional rights are violated as a result. *Liebe v. Norton*, 157 F.3d 574, 579 (8th Cir. 1998) (citing *White v. Holmes*, 21 F.3d 277, 280 (8th Cir. 1994)).

While Plaintiff will likely have more specific facts after discovery, the facts in the Complaint state a plausible claim for relief under *Monell*. The Complaint alleges that the City has a long history of responding with excessive force to protestors who are invoking their First Amendment rights. At least as early as 2014, the City was involved in a minimum of three incidents where police indiscriminately used chemical agents against protestors without warning, without giving individuals an opportunity to comply with any instructions, without mitigating the impact of the use of chemical agents, and without ensuring a safe means of egress for people attempting to comply with police instructions. ECF Doc. 16, ¶¶ 28-29, 33-35; ECF Doc. 16-2, Temporary Restraining Order in *Templeton v. Dotson*, No. 4:14-cv-02019, at *3 (E.D. Mo. Dec. 11, 2014).

These actions by the City led a federal judge in the Eastern District of Missouri to enter a temporary restraining order—almost three years *before* the assault on Plaintiff—restraining the City from enforcing any rule, policy, or practice that grants law enforcement officials the authority or discretion to utilize "chemical agents" "for the purpose of dispersing groups of individuals who are engaged in peaceful, non-criminal activity." ECF Doc. 16, ¶ 30; ECF Doc. 16-2 at *3.

The Complaint also refers to and includes as an exhibit the subsequent settlement agreement entered into by the City relating to the use of force on protestors. ECF Doc. 16, ¶ 31. In that settlement agreement, the City agreed to remedy the violations outlined in the temporary restraining order. ECF Doc. 16, ¶ 31; ECF Doc. 16-3 Settlement Agreement in *Templeton v. Dotson*, No. 4:14-cv-02019, at *1-2 (E.D. Mo. Mar. 25, 2015). This included an agreement by the City not enforce any rule, policy or practice that grants law enforcement officials the authority or discretion to use chemical agents for the purpose of dispersing groups of individuals engaged in non-criminal activities or "for the purpose of frightening them or punishing them for exercising their constitutional rights." ECF Doc. 28, ¶ 31; ECF Doc. 16-3 at 1-2.

Further, the Complaint alleges that less than two months after entering into the Consent Decree, the police department began to violate its terms by indiscriminately using chemical agents

5

against peaceful, non-criminal protestors without warning. ECF Doc. 16, ¶¶ 33-35. This statement is supported in the Complaint by transcript testimony from *Ahmad v. St. Louis*, No. 4:17-cv02455, at 69 (E.D. Mo. Oct. 18, 2017). ECF Doc. 16-4 at 69. This testimony ultimately led the Court to conclude the plaintiffs were likely to prevail on their claim that the City "has a custom or policy of using chemical agents without warning on citizens engaged in expressive activity that is critical of police or who are recording police in retaliation for the exercise of their first amendment rights." ECF Doc. 16, ¶ 75; ECF Doc. 16-5, Memorandum and Order of Preliminary Injunction, *Ahmad v. St. Louis*, No. 4:17-cv-02455 (E.D. Mo. Nov. 15, 2017). The activity that gave rise to the Eastern District's conclusion that the City has a custom of unconstitutional misconduct in *Ahmad* is the same activity Plaintiff alleges happened to her on September 17, 2017. ECF Doc. 16, ¶ 55, 58-61.

These facts from the temporary restraining order, settlement agreement, and preliminary injunction show that the City has a custom of using excessive force, chemical agents and unconstitutional seizures against non-violent protestors. Further, given that the police department continued to violate protestors' constitutional rights even *after* the City was subject to a temporary restraining order and preliminary injunction, not to mention its voluntary entry into a settlement agreement, it is a reasonable inference the City was aware of the need to train, supervise, and discipline its officers regarding these practices. The failure to do so is evidence of the City's deliberate indifference to these constitutional violations. As a direct result of the City's failures, Defendant Officers violated Plaintiff's constitutional rights, causing Plaintiff physical injury, fear, apprehension, and concern for Plaintiff's safety. The Complaint sufficiently shows the existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the City's employees. Therefore, Plaintiff pleaded sufficient facts for a plausible claim for *Monell* liability against the City, and the motion to dismiss Count III should be denied.

### III. Plaintiff Pleaded Sufficient Facts to State Plausible Claims Against Defendant Hayden.

It is well established in the Eighth Circuit that supervisors are liable for a violation of constitutional rights where they personally participated in a violation, or knew about unconstitutional conduct and facilitated, approved, condoned or turned a blind eye to such conduct. *Riehm v. Engelking*, 538 F.3d 952, 962–63 (8th Cir. 2008); *Wagner v. Jones*, 664 F.3d 259 (8th Cir. 2011); *Andrews v. Fowler,* 98 F.3d 1069, 1078 (8th Cir. 1996) (tacit authorization or failure to sufficiently remediate actions qualifies as sufficient action by a supervisor). Further, a supervisor can be found liable under § 1983 "for deliberate indifference if he is aware of 'a substantial risk of serious harm,' even if he is not aware that the harm has, in fact, occurred." *Kahle v. Leonard, 477 F.3d 544, 551–52* (8th Cir. 2007) (quoting *Farmer v. Brennan*, 511 U.S. 825, 842, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994)). Plaintiff sufficiently pleaded facts that, accepted as true, state claims against Defendant Hayden for his personal violations of Plaintiff's First, Fourth, and Fourteenth Amendment rights that are "plausible on [their] face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

The Complaint alleges that, after citizens asked why officers committed violent, unconstitutional acts against fellow protestors, Defendant Olsten chose to antagonize the protestors. ECF Doc. 16, ¶¶ 55, 57. When the protestors did not take the bait, Defendant Olsten moved towards them before two additional officers attempted to calm him and move him away from the crowd. *Id.* at ¶ 55. His anger unabated, Defendant Olsten flexed his muscles before pulling out a large canister of pepper spray. *Id.* at ¶ 57.[2] Defendant Hayden stood five feet away from

---

[2]   On January 28, 2019, a criminal complaint was issued against Defendant Olsten charging him with Felony Assault in the First Degree and Felony Armed Criminal Action. *State v. Olsten*, No. 1922-CR00326 (Mo. Cir. Ct., City of St. Louis) (filed January 28, 2019). According to various news reports, Defendant Olsten lost his temper like he did in the instant case and alleged beat and shot a man that he had an altercation with in a bar. Doyle, Murphy, *St. Louis Police Officers William Olsten and Joseph Schmitt Booked on Assault Charges*, Riverfront Times (Jan. 30, 2019), https://www.riverfronttimes.com/newsblog/2019/01/30/st-louis-police-officers-william-olsten-and-joseph-booked-on-assault-charges.

Defendant Olsten. *Id.* at ¶ 56. Instead, of remediating Defendant Olsten's actions, Defendant Hayden watched his agitation intensify, and then failed to stop him when he pulled out his pepper spray. *Id.* at ¶ 59. Unhindered, Defendant Olsten pepper sprayed Plaintiff, without warning or criminal activity on Plaintiff's part. *Id.* at ¶ 61. Instead of protecting Plaintiff, stopping Defendant Olsten's actions, or immediately reprimanding Defendant Olsten, Defendant Hayden merely took cellphone video of the incident. *Id.* at ¶ 67. He tacitly authorized Defendant Olsten's unconstitutional force against Plaintiff.

In addition, given that the police department had a long history of indiscriminately using chemical agents against protestors without warning, without giving individuals an opportunity to comply with any instructions, without mitigating the impact of the use of chemical agents, and without ensuring a safe means of egress for people attempting to comply with police instructions, Defendant Hayden should have been aware of a "substantial risk of serious harm." ECF Doc. 16-3 at *3.

Plaintiff sufficiently pleaded facts from which the Court can reasonably infer that Defendant Hayden observed and condoned or turned a blind eye to the constitutional violations Defendant Olsten committed against Plaintiff. *Riehm*, 538 F.3d at 962–63. Defendants' Motion to Dismiss Counts against Defendant Hayden for failure to allege specific conduct should be denied.

**IV.** **Plaintiff Pleaded Sufficient Facts to State Plausible Constitutional Claims Against Defendant Olsten.**

Defendants argue that Defendant Olsten had probable cause or arguable probable cause to believe the protestors were committing crimes, justifying the use of force against Plaintiff. ECF Doc. 23 at 5. Probable cause exists "'when the totality of the circumstances at the time of the arrest are sufficient to lead a reasonable person to believe that the defendant has committed or is committing an offense.'" *Ulrich v. Pope Cty.*, 715 F.3d 1054, 1059 (8th Cir. 2013) (citing *Borgman v. Kedley,* 646 F.3d 518, 523 (8th Cir. 2011)). Arguable probable cause exists when "'an officer

8

mistakenly arrests a suspect believing it is based in probable cause if the mistake is 'objectively reasonable.'" *Id.*

The facts in the Complaint, which must be taken as true, provide that the protest was peaceful and lawful. ECF Doc. 16 at ¶¶ 37, 40-41, 46, and 66-67. To advance their argument, Defendants falsely state that the face of the Complaint establishes that protestors had "blocked traffic earlier." ECF Doc. 23 at 5, n. 2. In actuality, the facts in the Complaint provide that SLMPD officers, not protestors, were blocking the roadways. ECF Doc. 16 at ¶ 39. Further, assuming *arguendo* that the protestors had blocked traffic "earlier," Defendants have not argued that Plaintiff blocked traffic or that any blockage was close in time to Defendant Olsten's application of force on Plaintiff two hours later.

Next, Defendants argue that Defendant Olsten had arguable probable cause to arrest protestors because they had "become angered at the treatment" of one of the arrested protestors. ECF Doc. 23 at 5, n. 2. It is not a crime to get angry, and Defendants have not argued that Plaintiff or the other protestors threatened Defendant Olsten or anyone else's safety. Instead, the Complaint, which must be accepted as true, provides that Defendant Olsten was never in danger, nor did he try to extricate himself from the protestors. ECF Doc. 16 at ¶ 58. Rather, Defendant Olsten tried to goad protestors into a fight before his fellow officers attempted to calm him down. *Id.* at ¶ 55. Defendant Olsten did not have or reasonably believe that he had probable cause; he did not even arrest Plaintiff. He intentionally pepper sprayed Plaintiff because he was angry that Plaintiff and other protestors used their First Amendment rights to question officers' unconstitutional conduct against other citizens.

Finally, Defendants argue that Defendant Olsten used reasonable force in pepper spraying Plaintiff. ECF Doc. 23 at 5, n. 2. Force must be analyzed under the Fourth Amendment objective reasonableness standard. *Graham v. Conner*, 490 U.S. 386, 394 (1989). Reasonableness of force is determined from the "perspective of a reasonable officer on the scene, rather than with the 20/20

9

vision of hindsight." *Id.* at 396. Factors like "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight" shed like on the reasonableness of force. *Small v. McCrystal*, 708 F.3d 997, 1005 (8th Cir. 2013) (quoting *Graham*, 490 U.S. at 396). "'[F]orce is least justified against nonviolent misdemeanants who do not flee or actively resist arrest and pose little or no threat to the security of the officers or the public.'" *Small*, 708 F.3d at 1005 (quoting *Brown v. City of Golden Valley*, 574 F.3d 491, 499 (8th Cir. 2009)).

Applying the reasonableness factors, Plaintiff had committed no crimes; Plaintiff was nonviolent, posing no threat to the officers or the public; and Plaintiff was not attempting to evade arrest. Therefore, a reasonable officer on the scene would not have pepper sprayed Plaintiff. Because Defendant Olsten did not have probable or arguable probable cause, and he was not attempting to effectuate an arrest or protect himself or others, his conduct against Plaintiff was unconstitutional.

## V. Plaintiff Pleaded Sufficient Facts to State a Plausible Claim for § 1983 Conspiracy.

Defendants argue that Plaintiff does not have a valid § 1983 conspiracy claim because her underlying claims warrant dismissal. ECF Doc. 23 at 8-9. This argument fails, as stated above, because Plaintiff stated sufficient facts under Counts I-III and VII.

Moreover, Plaintiff's conspiracy claim is not barred by the intracorporate conspiracy doctrine. The Eighth Circuit has not determined whether the doctrine is even applicable to § 1983 claims. *Powers v. City of Ferguson,* 229 F.Supp.3d 894, 905 (E.D. Mo. 2017). Defendants offer no authority for the application of the intracorporate conspiracy doctrine to § 1983 conspiracy claims and rely solely on case law raising that defense under § 1985. ECF Doc. 23 at 7-8.[3]

---

[3] Defendants cite *Cross v. Gen. Motors Corp.*, 721 F.2d 1152 (8th Cir. 1983), *L.L. Nelson Enters., Inc. v. County. of St. Louis, Mo.*, 673 F.3d 799 (8th Cir. 2012), and *Kelly v. City of Omaha, Neb.*, 813 F.3d 1070 (8th Cir. 2016), all conspiracy cases under 42 U.S.C. § 1985.

Further, courts in this circuit have repeatedly denied motions to dismiss based on the intracorporate conspiracy doctrine in § 1983 cases. *Powers*, 229 F. Supp. 3d at 897; *Golden v. Moutray,* 2018 U.S. Dist. LEXIS 62828, at *11 (E.D. Mo. April 13, 2018); *Anzaldua v. Northeast Ambulance & Fire Prot. Dist.,* 2014 U.S. Dist. LEXIS 14568, at *8 (E.D. Mo. Feb. 5, 2014). For example, because the purpose of the intracorporate conspiracy doctrine is to shield corporations from liability for "routine, collaborative business decisions," several courts have held that allegations of police misconduct or excessive force are not protected; finding that "conspiracies and cover-ups are not the product of routine police department decisions-making." *McDorman v. Smith,* 2005 U.S. Dist. LEXIS 15964, at *6 (N.D. Ill. August 2, 2005); *see also Howard v. City of Chicago,* 2004 U.S. Dist. LEXIS 21537, at *12 (N.D. Ill. Oct. 25, 2004); *Golden,* 2018 U.S. Dist. LEXIS 62828, at *11; *Newsome v. James,* 2000 U.S. Dist. LEXIS 5678, at *15 (N.D. Ill. April 26, 2000); *Pinell v. City of Gerald, Mo.,* 2018 U.S. Dist. LEXIS 45957, at *8 (E.D. Mo. Mar. 21, 2018).

What is more, several courts have held that because of the standard of review on motions to dismiss "the interests of justice are not best served by considering the intracorporate conspiracy doctrine at this pre-evidentiary stage" in § 1983 conspiracy cases. *Golden*, 2018 WL 1784395 at *4 (citing *Powers*, 229 F. Supp. 3d 894, 904–05 (E.D. Mo. 2017); *Anzaldua*, 2014 WL 46234, at *8 (aff'd in part, rev'd in part on other grounds and remanded, 793 F.3d 822 (8th Cir. 2015)).

Here, Defendants' behavior involves illegal and unconstitutional actions. As such, Defendants cannot be considered to have been acting within the scope of their employment or conducting routine activities, and the intracorporate conspiracy doctrine does not shield Defendants from liability. Further, given the early stage of this litigation and the lack of discovery on the matter, even if the Court were inclined to consider the applicability of this doctrine to the

11

facts, the Court should defer such analysis until the summary judgment stage. Thus, Defendants' motion to dismiss Count II should be denied.

**VI.   Plaintiff Pleaded Sufficient Facts to State Plausible Claims Under Missouri Law.**

Because Plaintiff stated plausible claims for relief under federal law, the Court has jurisdiction over Plaintiff's state law claims, Counts IV-VI and VIII of the Complaint.

Defendants do not argue that Plaintiff has not sufficiently pleaded the elements of her state law claims. Instead, Defendants unsuccessfully argue that Plaintiff's state law claims are barred by official and sovereign immunity. Defendants arguments about the redundancy of the battery and assault claims only holds water if Defendants are conceding that they engaged in battery. Assuming that Defendants challenge the Battery count, the Assault count is appropriate at this stage of litigation.

**A.   Defendant Officers are Not Entitled to Official Immunity.**

Officers may be entitled to official immunity for claims related to discretionary, rather than ministerial acts, performed within the scope of their authority. *Southers v. City of Farmington, Mo.*, 263 S.W.3d 603, 610 (Mo. banc 2008); *Seiner v. Drenon*, 304 F.3d 810, 813 (8th Cir. 2002). An act that requires an officer to exercise reason and judgment to determine a course of action is discretionary. *Green v. Denison*, 738 S.W.2d 861, 865 (Mo. banc 1987). Because Defendant Olsten used force on Plaintiff, a law-abiding citizen, he was not acting within the scope of his authority, which disentitles him to official immunity. Defendant Hayden was not acting within the scope of his authority when he failed to intervene and recorded Defendant Olsten's conduct instead, disentitling him to official immunity. However, assuming *arguendo* that Defendant Officers were acting within the scope of their authority, official immunity "'does not apply to discretionary acts done in bad faith or with malice.'" *Davis v. White*, 794 F.3d 1008, 1013 (8th Cir. 2015) (quoting *Blue v. Harrah's North Kan. City, LLC*, 170 S.W.3d 466, 479 (Mo. App. 2005)). "'A defendant acts with malice when he wantonly does that which a man of reasonable intelligence would know

12

to be contrary to his duty and which he intends to be prejudicial or injurious to another.'" *Davis*, 794 F.3d at 1013 (quoting *State ex rel. Twiehaus v. Adolf*, 706 S.W.2d 443, 447 (Mo. banc 1986)). "Bad faith" means "'conscious wrongdoing'" or "'breach of a known duty through some ulterior motive.'" *Id.*

Defendant Officers acted with malice or in bad faith. As described in detail above, Defendant Olsten attempted to goad and incite lawful protestors. ECF Doc. 16, ¶¶ 55, 57. When they did not take the bait, without warning and for no lawful reason, Defendant Olsten pepper sprayed Plaintiff in the face, causing excruciating pain, labored breathing, and mucus drainage. Defendant Olsten made no attempt to arrest Plaintiff or the other citizens he sprayed; he calmly walked away after delivering the punitive chemical munitions. *Id.* at ¶¶ 61, 63-64. Defendant Hayden stood five feet away from Defendant Olsten. *Id.* at ¶ 62. Far from intervening, Hayden stood silently and taped Olsten's violent assault. Defendant Officers acted with malice.

An officer of reasonable intelligence would recognize that consciously or intentionally injuring a law-abiding citizen for exercising his First Amendment rights is a violation of her duties as an officer. Thus, Defendant Officers are not entitled to official immunity, and Defendants' motion as to Counts IV-VI and VIII should be denied.

### B. The City Waived Sovereign Immunity.

Municipalities waive sovereign immunity by purchasing liability insurance that covers the plaintiff's claim. *State v. Rel. Bd. of Trustees of Cty. Of Kansas Cty. Mem'l Hosp. v. Russell*, 843 S.W.2d 353, 360 (Mo. banc 1992). A plaintiff must plead specific facts establishing that the municipality waived sovereign immunity for his or her claims. *Parish*, 231 S.W.3d at 242 (citing *Hummel v. St. Charles City R–3 Sch. Dist.*, 114 S.W.3d 282, 284 (Mo. App. 2003)).

Here, the Complaint alleges that the City obtains insurance from or is self-insured through the Public Facilities Protection Corporation (PFPC), a not for profit corporation into which the City pays funds yearly. *See e.g.* ECF Doc. 16, ¶¶ 104-105. This statement alone, which must be

13

accepted as true, is sufficient to state a plausible claim that the City has waived sovereign immunity. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Such an inference is also supported by the City's own documentation. Indeed, City Counselor Julian Bush stated in a January 31, 2018 letter that the PFPC can be "properly thought to be self-insurance." *See* ECF Doc. 65, Exhs. A-D in *Faulk v. City of St. Louis*, No. 4:18-cv-0308-JCH (E.D. Mo. Feb. 27, 2019). There is more than sufficient evidence that the City obtains insurance from or is self-insured through the PFPC. Thus, the motion as to Counts IV-VI and VIII should be denied, as the City waived sovereign immunity.

### V.     All References to Other Cases are Essential to Plaintiff's Claims.

As discussed above, Plaintiff discusses the Stockley prosecution and verdict to set the proper context for the instant matter, that SLMPD officers routinely violate citizens' constitutional rights *when the police are the subject* of the protests. The other litigation discussed goes to the City's pattern and practice of violating citizens' constitutional rights even after the City has such knowledge and signs federal documents promising not to engage in these types of activities. This is a predicate element of a *Monell* claim. As such, the references are material and pertinent.

### CONCLUSION

For the reasons stated above, Plaintiff has pleaded sufficient facts to state a claim upon which relief can be granted. Therefore, Defendants' motion should be denied. Plaintiff respectfully requests that the Court deny Defendants' Motion to Dismiss Plaintiff's Amended Complaint in full.

Date: March 5, 2019                    Respectfully submitted,

                                              KHAZAELI WYRSCH LLC

                                              /s/ James R. Wyrsch
                                              James R. Wyrsch, MO53197
                                              Javad M. Khazaeli, MO 53735
                                              Kiara N. Drake, MO 67129
                                              911 Washington Avenue, Suite 211
                                              Saint Louis, MO 63101
                                              (314) 288-0777
                                              (314) 400-7701 (fax)
                                              james.wyrsch@kwlawstl.com
                                              javad.khazaeli@kwlawstl.com
                                              kiara.drake@kwlawstl.com