UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| HEATHER DeMIAN, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 4:18-CV-1680-AGF |
| | ) | |
| v. | ) | JURY TRIAL DEMANDED |
| | ) | |
| CITY OF ST. LOUIS, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**REPLY TO PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS**

Plaintiff has filed a memorandum opposing defendants' motion to dismiss the amended complaint "in full."   Memo.Opp.M.T.D. [doc. 29].  Defendants are constrained to reply to some of plaintiff's arguments.

1.      Plaintiff accuses defense counsel of "falsely" stating that protesters had blocked traffic prior to the incident involving plaintiff.  Doc. 29, p. 9.  This accusation is baseless.  The face of the amended complaint discloses that protesters had been continually marching in the streets, but plaintiff cynically avers that the *police* blocked traffic, as though they acted in a vacuum.  Amended complaint [doc. 16] ¶¶39, 44.

2.      The amended complaint does not plausibly allege any act or omission of defendant Hayden causing injury to plaintiff.

In a § 1983 suit the term "supervisory liability" is a misnomer.  *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009).[1]  A supervisor is only liable for his own misconduct and is not accountable for the misdeeds of his agents under a theory such as *respondeat superior* or supervisor liability.  *Whitson v. Stone Cnty.*, 602 F.3d 920, 928 (8th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 677).

---

[1] In her response, Plaintiff notably relies heavily on pre-*Iqbal* cases.

While the doctrine of *respondeat superior* does not apply to § 1983 cases, a supervisor may be liable under § 1983 if either his direct action or his failure to properly supervise and train the offending employee caused the constitutional violation at issue. *Jackson v. Nixon*, 747 F.3d 537, 543 (8th Cir. 2014).  Even if a supervisor is not involved in day-to-day operations, his personal involvement may be found if he is involved in "creating, applying, or interpreting a policy" that gives rise to unconstitutional conditions. *Id.*  In requiring a plaintiff to allege that each defendant was personally involved in the deprivation of his constitutional rights, courts assess each defendant relative to his authority over the claimed constitutional violation.  *Id.*

Plaintiff fails to allege how defendant Hayden was personally involved in the deprivation of his constitutional rights.  Plaintiff's allegations show only that Hayden was nearby when defendant Olsten deployed mace or pepper spray against an unruly crowd that arguably was threatening interference with an arrest, allegedly hitting plaintiff. Accepting the plaintiff's allegations concerning defendant Olsten as true, however, they reveal at most a random, unauthorized act.  Plaintiff does not and cannot allege that Hayden was personally involved in creating, applying, or interpreting a policy that gives rise to unconstitutional conditions, or that he deliberately failed to supervise or train offending officers.  As discussed in defendants' earlier arguments related to *Monell*, plaintiff has failed to allege a City policy or custom that violates Plaintiff's constitutional rights.   There is no indication in the amended complaint that defendant Hayden personally directed anyone to mace plaintiff.

3.      The conspiracy theory of count II does not state an actionable claim against defendants.

Plaintiff argues that the intracorporate conspiracy rule cannot be applied in the context of a motion to dismiss, citing, among others, cases such as *Anzaldua v. Northeast Ambulance & Fire Prot. Dist.*, 2014 U.S. Dist. LEXIS 14568 (E.D.Mo. 2014) and *Golden v. Moutray*, 2018 U.S. Dist. LEXIS 62828 (E.D.Mo. 2018).  Defendant must respectfully submit that this facile analysis flies in the face of the principles enunciated by *Ashcroft v. Iqbal,* 556 U.S. 662 (2009); indeed, many cases cited by plaintiff do not even mention *Iqbal*.  In any event, the amended complaint in this case provides ample basis for this Court to view the plausibility of the conspiracy claim, given the wholesale incorporation of hundreds of pages of testimony in another case, which are part of the complaint, *Sierra Club v. Con-Strux, LLC,* 911 F.3d 85 (2d Cir. 2018), and which, it is safe to say, put the complaint in this case in a different class.   While defendants have questioned the propriety of this technique, cf. *U.S. v. Int. Longshoremen's Ass'n,* 518 F.Supp.2d 422 (E.D.N.Y. 2007) , the defendants can hardly be blamed for seeking to take advantage of the material proffered and relied on by plaintiff to plaintiff's detriment.

The Supreme Court has yet to determine if a conspiracy theory is a viable theory of liability under 42 U.S.C. §1983.  Cf. *Ziglar v. Abbasi,* 137 S.Ct. 1843 (2017)(noting the question was still open under 42 U.S.C. §1985, which expressly pertains to civil rights conspiracies).  Many courts have accepted the theory.  Nevertheless, the theory seems to contravene the bedrock principle that liability under §1983 is personal and not vicarious.  Further, insofar as the theory is invoked to fasten liability on a municipality, the theory also contravenes the related principle that a municipality cannot be liable on a theory of *respondeat superior*, but only on the basis of a policy or custom of the municipality that has the force of law.

3

It is elementary that the parameters of §1983 liability derive from the general law of torts.  E.g., *Carey v. Piphus,* 435 U.S. 247 (1978).  Under the law of torts, liability for a conspiracy is a form of vicarious or derivative liability:  the conspirators are liable not for their agreement, but for an act pursuant to the agreement that injures the plaintiff.  See, e.g., *Royster v. Baker,* 365 S.W.2d 496 (Mo. 1963); see also T. Cooley, *The Law of Torts* §31 (1907).

It follows, therefore, that a city cannot be liable under §1983 for a conspiracy among its employees--unless the employees are policymakers and their agreement can be said to represent the policy of the city.  If that is so, of course, then there is no need to claim a conspiracy:  the city is liable because of the decision of its policymakers.  Cf. *City of St. Louis v. Praprotnik,* 485 U.S. 112 (1988).

In the instant case, the amended complaint cannot and does not plausibly allege that the City's policymakers agreed to order the macing of  plaintiff.  On the contrary, the face of the pleading refutes the notion.  The testimony of various witnesses in the *Ahmad* preliminary injunction hearing demonstrates that there was no agreement involving the Mayor or any other policymaker to execute unconstitutional arrests or use unlawful force in relation to the so-called Stockley protests.  Moreover, the testimony incorporated in the amended complaint demonstrates that there was no "agreement" to make illegal arrests or use unlawful force:  the actions of the police were directed at arresting persons reasonably believed to be violating or to have violated the law. The City simply cannot be held liable on plaintiff's conspiracy theory.  Likewise, the City's command or supervisory police officers cannot be liable on a conspiracy theory, which is merely *respondeat superior* by another name.

Assuming that a conspiracy theory is even viable under §1983, the amended complaint does not plausibly plead such a claim against the City or defendants Hayden, or Olsten.  The intracorporate conspiracy rule precludes fastening liability on an entity and its employees acting within the scope of their authority.  "The rule is derived from the nature of the conspiracy prohibition. Conspiracy requires an agreement—and in particular an agreement to do an unlawful act—between or among two or more separate persons. When two agents of the same legal entity make an agreement in the course of their official duties, however, as a practical and legal matter their acts are attributed to their principal. And it then follows that there has not been an agreement between two or more separate people." *Abbasi,* supra, 137 S.Ct. at 1868.

Leaving aside the question of qualified immunity, it is clear that the acts of the defendants in this case cannot constitute an actionable conspiracy.  Further, despite the conclusional allegations of the amended complaint, the incorporated preliminary injunction evidence shows that there was no directive by any command officer to use unlawfully excessive force during the arrests.  On the contrary, the amended complaint on its face refutes any contention that a conspiracy claim is "plausible."

4.      The theory of municipal liability is not sufficiently pleaded in count III, with or without the prolix exhibits appended to the amended complaint.  Plaintiff's response argues that  municipal liability should attach to the City because, as it alleges, the "City has a long history of responding with excessive force to protestors who are invoking their First Amendment Rights." Doc. 29, p. 5. But a further look at the allegations asserted by the plaintiff, as well as the exhibits attached to the Amended Complaint [doc. 16] make clear that there is no widespread custom of unconstitutional

conduct "having the force of law." *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 167 (1970); see also *Jane Doe "A" v. Special School Dist.*, 901 F.2d 642, 646 (8th Cir. 1990). In particular, the allegations relating to a settlement agreement refute the claim of municipal liability.  Defendant City, sued when the St. Louis police department was acting as part of a "Unified Command" with the St. Louis County Police Department and the Missouri Highway Patrol, entered into a consent agreement to clarify and refine its policies regarding the use of chemical munitions during protests.  Amended complaint [doc. 16],  Ex. B, p. 1;  Ex. C.  The fact that the City entered into the settlement agreement regarding the manner of responding to protests does not support the claim of an unconstitutional custom, rather it demonstrates that the City was not deliberately indifferent to any constitutional issues. See *Rogers v. City of Little Rock*, 152 F.3d 790, 799 (8th Cir. 1998)(holding that a police department's investigation into prior allegations of misconduct demonstrated there was no deliberate indifference to the allegations by the Department).

Even if everything that the plaintiff alleges is true, then at best, there are individual officers who committed individual tortious acts (as plaintiff alleges were committed by defendant Olsten); but the City cannot be held liable on a *respondeat superior* basis.  *Soltesz v. Rushmore Plaza Civic Ctr.*, 847 F.3d 941, 947 (8th Cir. 2017) (citing *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479 (1986)). The facts alleged, taken as true, do not allege a widespread custom or policy that was the "moving force," behind any constitutional violation that plaintiff may have experienced. See *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 691 (1978); see also *Szabla v. City of Brooklyn,* 486 F.3d

385 (8th Cir. 2007)(*en banc*). So the claims for municipal liability against the City must be dismissed.[2]

  5.  The individual defendants are entitled to official immunity against the state law claims, given that the pleading on its face establishes that defense.

  While official immunity, unlike sovereign immunity, is an affirmative defense to a Missouri tort claim, the face of the amended complaint shows that defendant officers are entitled to official immunity. Plaintiff argues that her claims fall within the bad faith exception to official immunity. Plaintiff argues Defendant officers are not entitled to official immunity because they acted with bad faith or malice. However, bare conclusory allegations of malice, without specific facts evidencing bad faith, are insufficient to satisfy the bad faith exception. *Stephens v. Dunn*, 453 S.W.3d 241, 251 (Mo.App.S.D. 2014). Plaintiff's amended complaint fails to allege specific facts evidencing bad faith or malice on the part of Defendant officers.  The amended complaint does not allege any facts evidencing bad faith or malice specific to defendant Hayden, who was clearly performing a discretionary duty. The Missouri courts have noted that bad faith or malice requires "actual intent to cause injury," "intentional doing of a wrongful act without legal justification or excuse," and "done knowingly and deliberately, for an improper motive. *Stephens v. Dunn*, 453 S.W.3d 241, 251. Plaintiff argues, "an officer of reasonable

---

[2] Plaintiff relies on cases which in turn rely on pre-*Iqbal* cases as authorizing superficial pleading of facts showing a municipal policy or custom.  Defendant submits that those cases are irreconcilable with *Iqbal*.  It is precisely to avoid subjecting a municipal defendant to the burden and expense of discovery that *Iqbal's* precepts must be applied here.  As the Supreme Court observed in *Rizzo v. Goode,* 423 U.S. 362 (1976), there is no "unacceptably high" number of prior incidents that establishes §1983 liability; the plaintiff must establish a causal link between prior incidents and deliberate conduct of policymakers.  Dismissal of a "custom" claim is appropriate under F.R.Civ.P. 12(b)(6). *Whitney v. City of St. Louis,* 887 F.3d 857 (8th Cir. 2018).

intelligence would recognize that arresting and consciously or intentionally injuring a law-abiding citizen for exercising her First Amendment rights is a violation of his duties as an officer." Doc. 29, p. 14.  However, deciding to arrest someone is a discretionary act because "the officer must decide what course should be pursued based on the circumstances at hand." *White v. Jackson*, 865 F.3d 1064, 1074. Here, Defendant officers were performing discretionary acts in the course of deciding to arrest plaintiff based on the circumstances at hand including the Plaintiff's failure to disperse. Therefore, defendant officers are entitled to official immunity.

6.      Plaintiff does not plead sufficient facts to show waiver of sovereign immunity by the City, notwithstanding the effort to inject extrinsic documents.

In this case, Plaintiff claims Defendant City has waived sovereign immunity and is therefore no longer shielded from tort liability. Plaintiff concludes his bare allegations that "City obtains insurance from or is self-insured though the Public Facilities Protection Corporation (PFPC) a not for profit corporation into which the City pays funds yearly" are  "sufficient to state a plausible claim that the City has waived sovereign immunity" and boldly claims these statements must be accepted as true. [Doc. 38, page 13]. Plaintiff cites to *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) in an attempt to bolster his/her conclusion.

Plaintiff's citation, however, misapplies *Iqbal* as Defendant City's alleged waiver of sovereign immunity though "self-insurance" is a legal conclusion and not a statement of fact. "Sovereign immunity is not an affirmative defense but is part of the plaintiff's *prima facie* case." *St. John's Clinic v. Pulaski Cty. Ambulance Dist.*, 422 S.W.3d 469, 471 (Mo. App. S.D. 2014) *citing to Shifflette v. Missouri Dept. of Nat.*

8

*Resources*, 308 S.W.3d 331, 334 (Mo.App.W.D. 2010). "The application of sovereign immunity to a defendant is a question of law." *Kreutz v. Curators of Univ. of Mo.,* 363 S.W.3d 61, 63–64 (Mo. App. W.D. 2011).

According to the Court in *Iqbal*, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. (Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we "are not bound to accept as true a legal conclusion couched as a factual allegation"). *Id.* at 679 (internal citations omitted). As Plaintiff's allegations are not statements of fact, this Court is not bound to accept them as true. Instead, to survive a Motion to Dismiss, Plaintiff must come forward with sufficient facts to establish a waiver of sovereign immunity—a burden he/she will be unable to carry in this case.

## Conclusion

For the foregoing reasons and the reasons stated in the defendants' prior memorandum, the amended complaint herein should be dismissed.  At a minimum, all claims against defendants City and Hayden can and should be dismissed.

Respectfully submitted,
JULIAN L. BUSH
CITY COUNSELOR

/s/ Robert H. Dierker
Robert H. Dierker 23671MO
Associate City Counselor
dierkerr@stlouis-mo.gov
Brandon Laird 65564MO
Associate City Counselor
Abby Duncan 67766MO
Assistant City Counselor
Meghan Bruyns 69987MO
Assistant City Counselor
Amy Raimondo 71291MO
Assistant City Counselor
1200 Market St.
City Hall, Rm 314
St. Louis, MO 63103
314-622-3361
Fax 314-622-4956