UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| HEATHER DE MIAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 4:18-cv-01680-AGF |
| | ) | |
| CITY OF SAINT LOUIS, MISSOURI, et al., | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

Plaintiff Heather De Mian, a journalist who relies on a wheelchair for mobility, claims that during peaceful protest activity following the September 15, 2017, verdict in *State of Missouri v. Stockley*, St. Louis Metropolitan Police Department (SLMPD) officers unlawfully pepper sprayed her. Plaintiff brings this civil rights action under 42 U.S.C. § 1983 against SLMPD officers John Hayden and William Olsten[1] alleged to be involved in the relevant events, as well as the City of St. Louis. This is one of several cases arising out of SLMPD officers' conduct with respect to the *Stockley* protests.

As have the defendants in the other cases, Defendants here move to dismiss or, alternatively, to strike Plaintiff's amended complaint. For the reasons that follow, the Court will dismiss Plaintiff's failure to train and supervise claims against the City, the

---

[1] Plaintiff names each of the officers in their individual and official capacities, without specifying in which capacity the various claims are asserted. However, any claim against officers in their official capacity is treated as a claim against the City. *See Rogers v. City of Little Rock, Ark.*, 152 F.3d 790, 800 (8th Cir. 1998).

excessive force claim against Defendant Hayden, and the request for punitive damages on the state law claims against the City. The Court will otherwise deny the motion to dismiss.

## BACKGROUND

Taken as true for the purpose of this motion, the facts alleged in the amended complaint are as follows. On September 15, 2017, the Circuit Court of the City of St. Louis issued its findings and verdict in *Stockley*, prompting some members of the public to engage in protests around the City. The protests concerned not only the verdict but broader issues, including racism in the criminal justice system and the use of force by police against African-American citizens. Although most of the protests were non-violent, SLMPD officers "amassed at several protests wearing military-like tactical dress, helmets, batons, and full-body riot shields and carrying chemicals." ECF No. 16 ¶ 22.

On September 29, 2017, a protest occurred on the streets of downtown St. Louis, including near Busch Stadium, beginning at approximately 7:00 p.m. Throughout the course of several hours, the protestors marched up and down various streets of downtown protesting police violence. SLMPD blocked street intersections and regulated pedestrian and traffic flow during the demonstrations.

At approximately 9:00 p.m., protestors who had been marching elsewhere in downtown St. Louis began making their way south on Broadway towards Busch Stadium. When the protestors reached the intersection of Broadway and Walnut, SLMPD officers "began indiscriminately using pepper spray on civilians without provocation of violence

or criminal behavior." ECF No. 6 at ¶ 45. Video evidence shows the protestors were acting peacefully and calmly.

Without warning, a SLMPD officer violently threw one protestor, Reverend Gray, to the ground, and protestors began to loudly voice their disapproval of the force used and loudly questioning why the police had decided to use violence. After the police shot another protestor with a taser, protestors again began demanding why the police were deploying such a weapon. In response, Olsten began antagonizing the protestors, yelling "Come and f--- me up then." Two other SLMPD officers tried to grab Olsten, calm him down, and move him away from the crowd. Hayden, at the time a SLMPD major, was standing approximately five feet to the right of Olsten.

Olsten was not in danger or trying to extricate himself from a dangerous situation. He became increasingly agitated and was observed to "very pronouncedly chomp on his gum and begin to flex his muscles." *Id.* at ¶ 57. Then, Olsten pulled out and fired a "large fogger like canister of pepper spray" without first giving any dispersal order or warning, and the spray hit Plaintiff and three other citizens. *Id*. at ¶¶ 59.

Plaintiff, who was using her wheelchair and wearing a neck lanyard identifying her as a member of the press, began to feel excruciating pain from the pepper spray. Her eyes began to burn, mucus ran from her nose, and her breathing became labored. Olsten made no attempt to effectuate any arrests after spraying Plaintiff and others with the pepper spray, and instead walked away. During the incident, Hayden was in the middle of the SLMPD officers wearing a white shirt, indicating he was a supervisor, and took no

steps to prevent Olsten from inflicting punishment on peaceful protestors and members of the media.

As noted above, Plaintiff's nine-count amended complaint names the City and two SLMPD officers alleged to be involved in the relevant events. Plaintiff asserts violations of the First and Fourteenth Amendments (Count I) against Hayden and Olsten, as well as excessive force against Olsten (Count VII). Plaintiff asserts § 1983 claims against the City (Count III) alleging municipal liability for the officers' unlawful actions and against all Defendants (Count II) alleging that Defendants "acting in their individual capacities and under color of law, conspired together and with others, and reached a mutual understanding to undertake a course of conduct that violated Plaintiff's civil rights." *Id.* at ¶ 87. Finally, Plaintiff asserts supplemental state-law claims against all Defendants alleging assault (Count IV), intentional infliction and negligent infliction of emotional distress (Counts V and VI), battery (Count VIII), and malicious trespass of property (Count IX).

Defendants move to dismiss the second amended complaint for failure to comply with the "short and plain statement" requirement of Fed. R. Civ. P. 8(a). Alternatively, Defendants move to strike certain paragraphs of the amended complaint under Fed. R. Civ. P. 12(f) as immaterial or impertinent. Hayden moves to dismiss Plaintiff's § 1983 claims against him under Rule 12(b)(6), arguing that Plaintiff fails to allege that he personally participated in the use of force. As to the state-law claims, Hayden and Olsten argue that they should be dismissed under Missouri's official immunity doctrine.

The City moves to dismiss Plaintiff's § 1983 conspiracy claim on the basis that it is barred by the intracorporate conspiracy doctrine, citing *Kelly v. City of Omaha, Neb.*, 813 F.3d 1070, 1078 (8th Cir. 2016). The City contends that, as the Eighth Circuit held in *Kelly*, a local government entity cannot conspire with itself through its agents acting within the scope of their employment. The City further argues the civil conspiracy claim fails because the underlying claims on which it is based fail.

Next, the City moves to dismiss Plaintiff's § 1983 claim, arguing that it fails to adequately allege municipal liability under *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978). Finally, the City argues that Plaintiff's state-law claims against it are barred by sovereign immunity and that, in any event, Mo. Rev. Stat. §537.610.3 precludes the recovery of punitive damages against it on the state-law claims.

## DISCUSSION

To survive a motion to dismiss, a plaintiff's claims must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The reviewing court accepts the plaintiff's factual allegations as true and draws all reasonable inferences in favor of the nonmoving party. *Torti v. Hoag*, 868 F.3d 666, 671 (8th Cir. 2017). But "[c]ourts are not bound to accept as true a legal conclusion couched as a factual allegation, and factual allegations must be enough to raise a right to relief above the speculative level." *Id.*

### Motion to Dismiss Under Rule 8(a) and Alternative Motion to Strike

Defendants move to dismiss the amended complaint for failure to comply with the "short and plain" statement requirement of Rule 8(a), arguing that the complaint is

"replete with tendentious and immaterial allegations attacking the integrity of Missouri courts, injecting spurious issues to which defendants cannot possibly frame a response . . . ." ECF No. 23 at 2. Specifically, Defendants object to Plaintiff's allegations concerning the *Stockley* verdict, the nature of public protests in response thereto, and prior orders of this Court concerning SLMPD actions in response to public protests. Alternatively, Defendants move to strike these paragraphs under Fed. R. Civ. P. 12(f) as immaterial or impertinent.

The undersigned, as well as other judges in this District, has held with respect to the same challenge in related cases, that the amended complaint's factual allegations and the supporting exhibits to which the Defendants object are relevant to Plaintiff's municipal liability claim at a minimum. *See Thomas v. City of St. Louis, Mo.*, 4:18-cv-01566-JAR, 2019 WL 3037200 (E.D. Mo. July 11, 2019); *Laney v. City of St. Louis, Mo.*, No. 4:18 CV 1575 CDP, 2019 WL 2423308 (E.D. Mo. June 10, 2019); *Aldridge v. City of St. Louis, Mo.*, No. 4:18-CV-1677 CAS, 2019 WL 1695982 (E.D. Mo. Apr. 17, 2019); *see also Alston v. City of St. Louis, Mo.*, 4:18-CV-01569-AGF, 2019 WL 2869896 (E.D. Mo. July 3, 2019). Neither dismissal under Rule 8(a) nor striking under Rule 12(f) is warranted.

## Motion to Dismiss Under Rule 12(b)(6)

### I.    Individual Liability of Hayden Under § 1983

Defendant, in a one-paragraph argument, moves to dismiss Plaintiff's § 1983 claims, which he does not identify by count or title, and argues that a supervisory police officer can only be held liable for a subordinate's use of force if the supervisor personally

participated in or tacitly collaborated in the constitutional tort.  Hayden complains that Plaintiff failed to allege that he was aware of Olsten's illegal behavior or that the duration of the incident was sufficient to have allowed him to intervene, citing *White v. Jackson*, 865 F.3d 1064 (8th Cir. 2017).

As an initial matter, Hayden's motion to dismiss does not refer to Plaintiff's First and Fourteenth Amendment claims in Count I or civil conspiracy claim in Count II. Rather, this part of the motion to dismiss refers only to Plaintiff's excessive force claim, asserted in Count VII.  The Court therefore concludes Hayden's motion to dismiss Plaintiff's § 1983 claims is directed only to Count VII, and the Court will limit its discussion accordingly.

The amended complaint does not specifically allege a claim of excessive force against Hayden.  While the body of the Count VII refers to "Defendants," the alleged conduct upon which the claim is based is assaulting and spraying Plaintiff with pepper spray, and the count is directed at Olsten, not Hayden.  Nowhere does the amended complaint allege, in the facts section or otherwise, that Hayden assaulted or sprayed Plaintiff with pepper spray.  The amended complaint also contains no facts, as opposed to mere conclusions, that Hayden was personally involved in the alleged violations of Plaintiff's constitutional rights.  *See Brockinton v. City of Sherwood, Ark.*, 503 F.3d 667, 673 (8th Cir. 2007) (recognizing that a supervisor may be held individually liable under § 1983 if he either "directly participates in the constitutional violation or if he fails to train or supervise the subordinate who caused the violation").

Plaintiff argues that she states a claim against Hayden for failure to supervise and failure to intervene. However, as noted by another judge in this District regarding an almost identical complaint, "None of the counts in the complaint allege legal allegations of failure to supervise with regard to Hayden, and it does not appear that the facts as presently alleged would support such a claim." *Aldridge*, 2019 WL 1695982, at n.7. Similarly, Plaintiff's complaint might support a claim against Hayden for failure to intervene; however, the amended complaint does not set forth such a claim or make the required factual and legal assertions. *Id.*

Courts "are not concerned . . . with the labels a party attaches to a claim. Instead, we focus on the substance of the underlying factual allegations." *In re Baycol Prods. Litig.*, 732 F.3d 869, 875 n.4 (8th Cir. 2013). That said, "A district court . . . is not required to divine the litigant's intent and create claims that are not clearly raised, and it need not conjure up unpled allegations to save a complaint." *Gregory v. Dillard's, Inc.*, 565 F.3d 464, 473 (8th Cir. 2009) (en banc) (quotation marks and citation omitted).

As noted in *Aldridge*, there is no vicarious liability under 42 U.S.C. § 1983, *Monell*, 436 U.S. at 691, and Section 1983 does not "sanction tort by association." *Smith v. City of Minneapolis*, 754 F.3d 541, 547 (8th Cir. 2014) (internal quotation marks omitted). A supervisor may not be held liable under § 1983 merely because his subordinate committed a constitutional tort. *See Clay v. Conlee*, 815 F.2d 1164, 1169-70 (8th Cir. 1987). Plaintiff has not alleged a claim of excess force against Hayden, and the Court will not conjure one based on Plaintiff's alleged facts. Accordingly, to the extent

Plaintiff purports to assert claims of failure to supervise or failure to intervene, based on this amended complaint, the motion to dismiss will be granted.

## II. Civil Conspiracy Claim

"To prove a 42 U.S.C. § 1983 conspiracy claim, a plaintiff must show: (1) that the defendant conspired with others to deprive him of constitutional rights; (2) that at least one of the alleged co-conspirators engaged in an overt act in furtherance of the conspiracy; and (3) that the overt act injured the plaintiff." *White v. McKinley*, 519 F.3d 806, 814 (8th Cir. 2008) (citation omitted). The first element "requires allegations of specific facts tending to show a 'meeting of the minds' among the alleged conspirators." *Murray v. Lene*, 595 F.3d 868, 870 (8th Cir. 2010). "The plaintiff is additionally required to prove a deprivation of a constitutional right or privilege in order to prevail on a § 1983 civil conspiracy claim." *White*, 519 F.3d at 814.

The City's primary challenge to Plaintiff's § 1983 conspiracy claim is that it is barred by the intracorporate conspiracy doctrine. The cases relied upon by the City involved conspiracy claims under 42 U.S.C. § 1985. *See Kelly*, 813 F.3d at 1078. However, the Eighth Circuit has not addressed whether the doctrine applies to § 1983 conspiracy claims, and in the absence of such direction from the Eighth Circuit, the judges in this District—including in other *Stockley* protest cases—have consistently declined to extend the doctrine's reach, at least at the pleading stage. *See Aldridge*, 2019 WL 1695982, at *8 (collecting cases). Here, too, the Court finds that it is inappropriate to apply the intracorporate conspiracy doctrine at this stage.

The Court further rejects the City's argument that the conspiracy claim fails because the underlying claims fail. As noted above, the motion to dismiss does not even address Plaintiff's First and Fourteenth Amendment claims. Because a constitutional violation might be proved on those claims, the City's argument lacks merit. As such, the City's motion to dismiss Plaintiff's § 1983 conspiracy claim will be denied.

III.     *Monell* Claims Against the City

Plaintiff alleges that the following policies, practices, or customs caused the alleged constitutional violations in this case, thereby making the City liable under *Monell:*

> a. SLMPD officers' routine use of excessive force when policing protests, especially those at which police brutality is being protested;
>
> b. SLMPD's policy or custom of issuing vague and even contradictory dispersal orders without giving an opportunity to comply;
>
> c. SLMPD's policy of arbitrarily declaring unlawful assemblies in the absence of any threat or force or violent activity that provides no notice to citizens or unlawful conduct;
>
> d. Additionally, SLMPD has a custom, policy, or practice of violating the Fourth Amendment by regularly conducting unreasonable seizures and arresting individuals without probable cause.

ECF No. 16 at ¶ 96. Plaintiff also claims that the City inadequately trained, supervised, and disciplined SLMPD officers with respect to its officers' use of force. *Id.* at ¶ 97.

For § 1983 liability to attach to the City, Plaintiff must show that a constitutional violation resulted from an official municipal policy, an unofficial custom, or a deliberately indifferent failure to train or supervise. *Mick v. Raines*, 883 F.3d 1075, 1079

(8th Cir. 2018). In the motion to dismiss, the City argues that Plaintiff's factual allegations are insufficient to establish any of these bases for liability.

      a. <u>Official Policy or Custom</u>

As other judges in this District have held with respect to similar *Monell* allegations in the related cases, Plaintiff's amended complaint plausibly alleges that specific SLMPD policies or customs were the moving force behind the constitutional violations they suffered. *See Aldridge*, 2019 WL 1695982, at *9; *Laney*, 2019 WL 2423308, at *5.

Specifically, Plaintiff alleges a pattern of using chemical agents without warning against peaceful protestors, including incidents in October and November 2014, in May and August 2015, and in July 2017; as well as additional incidents that occurred after the *Stockley* verdict on September 15, 2017, and thereafter. Plaintiff also alleges that the City entered into a settlement agreement in March 2015 in *Templeton, et al. v. Dotson, et al.*, No. 4:14-CV-2019 CEJ, 2015 WL 13650910, (E.D. Mo.), in which it agreed not to use chemical agents to disperse groups of individuals engaged in non-criminal activity without first issuing clear and unambiguous warnings that such chemical agents would be used and without ensuring that there is a means of safe egress from the area (among other protections), but that thereafter SLMPD officers continued to use chemical agents against non-violent protestors without adequate warning or opportunity to comply.

These factual allegations are sufficient to support the existence of an unconstitutional policy or custom that plausibly caused the constitutional violations here. The City's motion to dismiss Plaintiff's *Monell* claims based on an unconstitutional policy or custom will therefore be denied.

11

b. <u>Failure to Train or Supervise</u>

However, the Court agrees with the City that Plaintiff's conclusory allegations with respect to her failure-to-train-or-supervise claim fail to survive a motion to dismiss. To state a viable § 1983 claim against the City for failure to train or supervise, Plaintiff must plead facts sufficient to show that: 1) the City's police officer training and supervision practices were inadequate; 2) the City was deliberately indifferent to the rights of others in adopting these practices, such that the City's failure to train and supervise was a result of deliberate and conscious choices; and 3) the City's training and supervision deficiencies caused Plaintiff's constitutional deprivation. *See Ulrich v. Pope Cty.*, 715 F.3d 1054, 1061 (8th Cir. 2013) (citation omitted).

Plaintiff pleads no factual allegations in support of this claim other than the conclusion that the "City has inadequately trained, supervised, and disciplined SLMPD officers, with respect to its officers' use of force." ECF No. 16 at ¶ 97. The undersigned agrees with the judges in the related cases, who have held that such an allegation, alone, is insufficient to state a claim. *See Aldridge*, 2019 WL 1695982, at *11 (holding that "It is not up to this Court to 'conjure up unpled allegations to save a complaint'"); *Laney*, 2019 WL 2423308, at *6. The Court will grant the City's motion to dismiss Plaintiff's *Monell* claim to the extent it is based on the City's alleged failure to train and failure to supervise SLMPD police officers.

IV.     State Law Claims

        a.  Sovereign Immunity

"[I]n the absence of an express statutory exception to sovereign immunity, or a recognized common law exception such as the proprietary function and consent exceptions, sovereign immunity is the rule and applies to all suits against public entities[.]"  *Metro. St. Louis Sewer Dist. v. City of Bellefontaine Neighbors*, 476 S.W.3d 913, 921-22 (Mo. 2016) (en banc).  Missouri law provides statutory exceptions to sovereign immunity, including, as relevant here, when a political subdivision purchases liability insurance to cover certain tort claims, in the amount of and for the purposes covered by the insurance purchased.  Mo. Rev. Stat. § 537.610.1; *see also Hammer v. City of Osage Beach*, 318 F.3d 832, 841 (8th Cir. 2003).  "[A] plaintiff must specifically plead facts demonstrating that the claim is within this exception to sovereign immunity" by pleading the existence of insurance and that the insurance covers the plaintiff's claim. *Epps v. City of Pine Lawn*, 353 F.3d 588, 594 (8th Cir. 2003).

        As to each state-law claim, Plaintiff has pleaded that the City obtains insurance through the Public Facilities Protection Corporation ("PFPC"), a not for profit corporation into which the City pays funds yearly; that the funds are later disbursed by the corporation to pay claims against the City; and that, alternatively, the City's relationship with the PFPC serves as a self-insurance plan because, as described in the 2017 Comprehensive Annual Financial Report for the City of St. Louis, "its sole purpose is to provide the City with a defined and funded self-insurance program for claims, judgments, and other related legal matters."  *E.g.*, ECF No. 16 at ¶¶ 114-115.

The undersigned agrees with the other judges in this District who have held that the same or similar allegations of PFPC insurance or self-insurance are sufficient at this stage to demonstrate that Plaintiff's state-law tort claims fall within an exception to sovereign immunity under § 537.610.1. *See, e.g.*, *Aldridge*, 2019 WL 1695982, at *13; *Laney*, 2019 WL 2423308, at *7; *see also Fortenberry v. City of St. Louis*, No. 4:18-CV-01937-JCH, 2019 WL 1242671, at *7 (E.D. Mo. Mar. 18, 2019). The Court will deny the City's motion to dismiss the state-law tort claims on the basis of sovereign immunity.

### b. Official Immunity

"Under Missouri law, the official immunity doctrine protects public officials from liability for injuries arising out of their discretionary acts or omissions, but not from liability in claims arising from their performance of ministerial acts." *Reasonover v. St. Louis Cty., Mo.*, 447 F.3d 569, 585 (8th Cir. 2006) (citation omitted). "[A] police officer's decision to use force in the performance of his duties is discretionary rather than ministerial." *Davis v. White*, 794 F.3d 1008, 1013 (8th Cir. 2015) (citation omitted).

But "official immunity does not apply to discretionary acts done in bad faith or with malice." *Id.* "Acting with malice requires an actual intent to cause injury." *Wealot v. Brooks*, 865 F.3d 1119, 1129 (8th Cir. 2017) (citing *State ex rel. Twiehaus v. Adolf*, 706 S.W.2d 443, 447 (Mo. 1986)). "A finding of bad faith embraces more than bad judgment or negligence. It imports a dishonest purpose, moral obliquity, conscious wrongdoing, or breach of a known duty through some ulterior motive." *Id.*

At this early stage, Plaintiff's allegations state facts from which it could be reasonably inferred that Olsten and Hayden acted in bad faith or with malice when Olsten

sprayed pepper spray in Plaintiff's face, even though Plaintiff was not engaged in unlawful activity, and Hayden observed but took no action to prevent it.[2]  *See Aldridge*, 2019 WL 1695982, at *14; *Laney*, 2019 WL 2423308, at *8.  The Court will deny Olsten and Hayden's motion to the extent it is based on official immunity.

      c.  <u>Punitive Damages</u>

Defendants assert in a single sentence that Plaintiff cannot recover punitive damages against the City on her state-law claims under Mo. Rev. Stat. § 537.610.3. Plaintiff does not address this argument in her response brief, but the plaintiffs in similar cases have conceded this point.  *See Thomas*, 2019 WL 3037200, at *8; *Laird v. City of St. Louis, Mo.*, No. 4:18-cv-01567-AGF, 2019 WL 2647273, at *7 (E.D. Mo. June 27, 2014).

"Section 537.610.3 of the Missouri Revised Statutes prohibits an award for punitive or exemplary damages against a public entity within the scope of sections 537.600 to 537.650," which includes the City of St. Louis.  *A.H. v. St. Louis Cty., Mo.*, No. 4:14-CV-2069 CEJ, 2015 WL 4426234, at *8 (E.D. Mo. July 17, 2015).  Because Plaintiff's claims against Hayden and Olsten in their official capacities are equivalent to claims against the City, Plaintiff is likewise barred from recovering punitive damages from them in their official capacities.  Accordingly, the Court will strike Plaintiff's

---

[2]     As noted previously, although Plaintiff asserts some facts that could support a claim of failure to supervise or intervene, Plaintiff fails to set forth such a claim in the amended complaint or make the requisite factual and legal assertions.

requests for punitive damages on her state-law claims against the City and against Hayden and Olsten in their official capacities only.

CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' motion to dismiss Plaintiff's amended complaint and alternative motion to strike is **GRANTED in part and DENIED in part**. ECF No. 22. The motion is **GRANTED** only as to the excessive force claim against Defendant Hayden, the failure to train and failure to supervise claims in Count III (the remainder of Count III survives dismissal), and the request for punitive damages on the state-law claims against the City of St. Louis and Olsen and Hayden in their official capacities. The motion is otherwise **DENIED**.

**IT IS FURTHER ORDERED** that Defendants' first motion to dismiss Plaintiff's complaint is **DENIED as moot**. ECF No. 10.

The Court will set a Rule 16 conference by separate Order.

_____
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 30th day of July, 2019.