UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| HEATHER DE MIAN, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) ) Case No. 4:18-CV-01680-AGF |
| CITY OF ST. LOUIS, MISSOURI, et al., | ) ) ) |
| Defendants. | ) ) |

## MEMORANDUM AND ORDER

This case arises out of a protest that occurred in St. Louis, Missouri following the acquittal of former St. Louis Metropolitan Police Department ("SLMPD") Officer Jason Stockley in the shooting death of Anthony Lamar Smith. At one of the protests, Defendant/Cross-Claimant William Olsten ("Olsten") deployed pepper spray at a group of protestors. Plaintiff Heather De Mian ("De Mian") alleges claims pursuant to 42 U.S.C. § 1983 against Olsten, Defendant Commissioner John Hayden ("Hayden"), and Defendant/Cross-Defendant City of St. Louis, Missouri (the "City") (collectively, "Defendants") for their roles in Olsten's use of pepper spray against her. De Mian raises a First Amendment claim against Olsten and Hayden (Count I), a Fourth Amendment claim against Olsten (Count VII),[1] a municipal liability claim against the City (Count

---

[1] The Court dismissed Count VII to the extent it raised a claim against Hayden. (Doc. No. 31).

III),[2] and a civil conspiracy claim against all three Defendants (Count II).  De Mian also alleges a number of supplemental state law claims against all Defendants.  (Counts IV, V, VI, VIII, and IX).  Olsten asserts a crossclaim against the City for reimbursement of all expenses and attorneys' fees he incurred in defending this matter, as well as payment of any damages and costs awarded to De Mian.  (Doc. No. 42).

This matter is before the Court on Olsten's motion for summary judgment, (Doc. No. 91), Hayden and the City's motion for summary judgment, (Doc. No. 94), and the City's motion to dismiss Olsten's crossclaim.  (Doc. No. 100).  The motions for summary judgment will be granted in part, with respect to De Mian's federal law claims.  The Court will decline to exercise supplemental jurisdiction over De Mian's remaining state law claims.  The City's motion to dismiss Olsten's crossclaim will also be granted, and Olsten's crossclaim will be dismissed without prejudice.

**Background**

Viewing the evidence and all reasonable inferences in the light most favorable to De Mian for purpose of the motions before the Court, the record establishes the following.  On September 15, 2017, Jason Stockley was acquitted of all charges in his criminal case.  (Doc. No. 95, the City and Hayden's Statement of Uncontroverted Material Facts ("SUMF") at ¶ 1).  Protests began that day and continued for more than a month.  (SUMF at ¶ 3).  Some of the protests were peaceful, but others became violent.

---

[2]     De Mian initially alleged the City was liable for failing to train or supervise in Count III.  The Court dismissed the failure to train and supervise claim because De Mian did not plead sufficient factual allegations in support of her claim. (Doc. No. 31).

2

(SUMF at ¶¶ 12-13, 16). On September 29, 2017, one such protest occurred in downtown St. Louis. (SUMF at ¶ 14). At around 7:00 p.m. individuals began protesting around Busch Stadium as a Cardinals game took place inside the Stadium. (Doc. No. 93, Olsten's Statement of Uncontroverted Material Facts ("OSUMF"), at ¶ 5). At approximately 9:00 p.m., a large group of protestors moved south on Broadway and arrived at the intersection of Broadway and Walnut. (OSUMF, at ¶ 8). De Mian, who was in her wheelchair at all relevant times, was present at the protest, in her capacity as a journalist, and recorded a video. (Doc. No. 109, De Mian's Response to SUMF ("DSUMF") at ¶¶ 26, 27, 36). There are multiple videos of the September 29 protest, including a video taken by De Mian (Doc. No. 93-7, the "De Mian video"), and a video recording by Maverick Media, which depicts police interaction with another protester, Amir Brandy, (Doc. No. 93-5, the "Maverick video"). At one point, as protesters were dispersing from the area, officers stopped remaining protestors to allow vehicles to move through the intersection. (OSUMF, at ¶¶ 11, 12). As police were waiving traffic through, an altercation occurred between multiple officers and several protestors. One protestor was taken to the ground, an officer deployed a taser at one of the protestors, and two protestors were arrested. (SUMF at ¶ 22-23). Olsten was not involved in the arrest or the tasing, but he did escort one of the arrestees from the scene. (SUMF at ¶ 23).

During the arrests, a number of protestors – including De Mian – returned to the area where the arrests were occurring. (SUMF at ¶¶ 25-28). Protestors began yelling and screaming at the officers. (OSUMF, at ¶ 21; SUMF at ¶¶ 25, 28-29). As the officers escorted the arrested protestors away, other protesters approached the officers. Olsten

3

and other officers issued numerous commands to the protestors to "get back" or back up. (SUMF at ¶ 32; OSUMF at ¶ 25). Olsten was holding a pepper spray fogger at the time. Brandy followed Olsten and yelled: "Put that s*** in my face, I'm going to f*** you up." (DSUMF at ¶ 29). Olsten stepped toward Brandy and told him to "Come and f*** me up then" and "keep coming," and motioned at him with the hand holding the pepper spray. (DSUMF at ¶¶ 31-32). During the confrontation, a female not alleged to be De Mian, was heard shouting to Olsten's right. The parties disagree about what she said; De Mian contends the woman said "shut this mother***** down," while Defendants claim she said "shoot this motherf******." (SUMF at ¶ 34; DSUMF at ¶ 34; OSUMF at ¶ 34). Upon hearing the woman, Olsten immediately turned to his right and deployed his pepper spray into the crowd for a few seconds,³ taking several steps towards Brandy and into the middle of the street and turning his body while he sprayed. (SUMF at ¶ 35; DSUMF at ¶ 36).

The record shows that when De Mian approached the area following the arrests, she shouted at the officers, twice asking them why they were "using a potentially lethal weapon" in reference to the tasing. (DSUMF at ¶ 122; De Mian video at 00:52-1:20). De Mian began to ask the question a third time but stopped mid-sentence. (De Mian video at 01:13-01:20). Although it is not clear from De Mian's video, it appears that she was hit by pepper spray at that time. Then, De Mian cursed at an unidentified officer and asked: "There was no dispersal order, why did you spray me? Why the f*** did you

---

³ Defendants claim the spray was for approximately four seconds. De Mian claims it was for five seconds.

4

spray me?" (*Id*. at 1:45-1:51). De Mian's questions can be heard in the video that she recorded but cannot be heard in the recording of the confrontation between Brandy and Olsten. (Maverick video). At Olsten's deposition, De Mian's attorney asked him what else was occurring around the time of the altercation between Brandy and Olsten, and Olsten responded: "The crowd was angry. A lot of screaming, yelling." (Olsten Deposition Doc. No. 93-4 at 74:24-25; 75:1). De Mian's counsel did not ask him if he heard De Mian. *Id*.

At the time of the verbal altercation between Brandy and Olsten, De Mian was located some 30 feet away from Olsten and 20 feet away from Brandy, near the sidewalk. (DSUMF at ¶¶ 36, 37; Maverick video at 1:58:14-2:00:01). She was sprayed as Olsten walked forward and turned his body. (DSUMF at ¶ 36). Olsten did not face De Mian while he was deploying the pepper spray. (Maverick Video at 1:56:03-2:00:21). Hayden was standing near Olsten with his back turned to the events and when Olsten began deploying the pepper spray. (SUMF at ¶ 40). He did not order Olsten to deploy the pepper spray. (SUMF at ¶ 38). There is no evidence that any of the protestors Olsten sprayed were arrested or detained during the incident.

**Legal Standard**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]he burden of demonstrating there are no genuine issues of material fact rests on the moving party, and we review the evidence and the inferences which reasonably may be drawn from the evidence in the light most favorable to the

5

nonmoving party." *Allard v. Baldwin*, 779 F.3d 768, 771 (8th Cir. 2015) (citation omitted). To avoid summary judgment, the nonmovant has the "burden of presenting evidence sufficiently supporting the disputed material facts that a reasonable jury could return a verdict in their favor." *Gregory v. City of Rogers*, 974 F.2d 1006, 1010 (8th Cir. 1992) (citation omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotation marks omitted) (citation omitted).

**First Amendment**

In Count I, De Mian alleges Olsten and Hayden violated her rights under the First and Fourteenth Amendment because Olsten pepper sprayed her in retaliation for exercising her First Amendment right to associate in public and express her views as part of a peaceful demonstration. To establish a First Amendment retaliation claim, a plaintiff must show: "(1) [she] engaged in a protected activity, (2) the government official took adverse action against [her] that would chill a person of ordinary firmness from continuing in the activity, and (3) the adverse action was motivated at least in part by the exercise of the protected activity." *Peterson v. Kopp*, 754 F.3d 594, 602 (8th Cir. 2014) (citation omitted). With respect to the third element, the plaintiff must show that the "official took the adverse action because the plaintiff engaged in the protected speech." *Revels v. Vincenz*, 382 F.3d 870, 876 (8th Cir. 2004) (citation omitted). Retaliation need not be the only motive, but it must be a substantial factor. *Peterson*, 754 F.3d at 602. This requires a showing that the plaintiff was "'singled out because of [his] exercise of

6

constitutional rights.'" *Id.* (quoting *Baribeau v. City of Minneapolis*, 596 F.3d 465, 481 (8th Cir. 2010)).

Although the causal connection is usually a question for the jury, "it can provide a basis for summary judgment when the question is so free from doubt as to justify taking it from the jury." *Revels*, 382 F.3d at 876 (internal quotation marks omitted) (citation omitted). "To avoid an adverse grant of summary judgment, [the plaintiff] must present affirmative evidence from which a jury could find that his constitutionally protected conduct informed the defendants' decisions . . . ." *Kilpatrick v. King*, 499 F.3d 759, 767 (8th Cir. 2007) (internal quotation marks omitted) (citations omitted).

### 1. Olsten

De Mian claims Olsten retaliated against her for exercising her First Amendment rights. Olsten asserts he is entitled to qualified immunity on this claim. "Qualified immunity shields a government official from suit under §1983 if his conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Kelsay v. Ernst*, 933 F.3d 975, 979 (8th Cir. 2019) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). When a defendant invokes a claim of qualified immunity, the burden falls on the plaintiff to show that "(1) the facts, viewed in the light most favorable to the plaintiff, demonstrate the deprivation of a constitutional right and (2) the right was clearly established at the time of the deprivation." *Snider v. City of Cape Girardeau*, 752 F.3d 1149, 1155 (8th Cir. 2014) (quoting *Baribeau*, 596 F.3d at 474). "If the answer to either question is no, then the defendant is entitled to qualified

7

immunity." *Baude v. City of St. Louis*, 476 F. Supp. 3d 900, 909 (E.D. Mo. 2020) (citing *Doe v. Flaherty*, 623 F.3d 577, 583 (8th Cir. 2010)).

To be clearly established, the "contours of the right must be sufficiently clear that a reasonable official would have understood that what he is doing violates that right." *Quraishi v. St. Charles Cty.*, 986 F.3d 831, 835 (8th Cir. 2021) (citation omitted).  The state of the law at the time of the alleged violation – articulated by precedent, controlling authority, or a robust consensus of persuasive authority – must give officials "fair warning that their conduct was unlawful." *Id*.  There may also be the "rare obvious case where the unlawfulness of the officer's conduct is sufficiently clear" even though existing precedent does not address similar circumstances. *Id*.

 "A citizen's right to exercise First Amendment freedoms without facing retaliation from government officials is clearly established." *Quraishi*, 986 F.3d at 838 (internal citation and quotation omitted).  *See also Peterson*, 754 F.3d at 602 (holding that criticizing a police officer is protected speech under the First Amendment).  The right was clearly established at the time of these events.  *Quraishi*, 986 F.3d at 838 (addressing the 2014 time period).

While De Mian's participation in a protest is protected activity, and the use of pepper spray may be an adverse action that would deter an ordinary person from continuing in the protected activity, De Mian has failed to present sufficient evidence showing that Olsten's action was motivated by her exercise of her First Amendment rights.  The video footage of the incident shows De Mian some 30 feet away from Olsten when he deploys the pepper spray.  There is no evidence that Olsten was aware of De

8

Mian's presence—much less that she was "singled out because of [her] exercise of constitutional rights." *Peterson*, 754 F.3d at 602 (citation omitted).

To the extent De Mian contends that Olsten retaliated against her because she asked the police why they would use a taser against a protestor, De Mian has presented no evidence that Olsten heard these questions, and the record suggests otherwise. De Mian's questions cannot be heard in the Maverick video, she was over 20 feet away from Olsten when he began to deploy the pepper spray, and there is no indication in any of the videos that Olsten was aware of De Mian's presence or reacted to her questions. *See Lozman v. City of Rivera Beach*, 138 S. Ct. 1945, 1954 (2018) (stating that the plaintiff "likely could not have maintained a retaliation claim against the arresting officer," in part, because there was "no showing that the officer had any knowledge of [plaintiff's] prior speech").

To the extent De Mian contends that Olsten retaliated against her because of her presence at and filming of the protest, she has not shown that Olsten "would not have taken the adverse action but for harboring retaliatory animus against the plaintiff because of [her] exercise of [her] First Amendment rights." *Mitchell v. Kirchmeier*, 28 F.4th 888, 896 (8th Cir. 2022). In other words, De Mian has not shown "a causal connection between" her presence at the protest "and the adverse action." *Revels*, 382 F.3d at 876.

Because the record contains no indication that Olsten was aware of De Mian's presence or speech at the protest – and De Mian has not suggested otherwise – a jury could not reasonably conclude that he targeted her or singled her out. Instead, the evidence tends to show that Olsten was motivated by other protestors. Immediately

9

before deploying his pepper spray, Olsten was engaged in a heated discussion with Brandy and an unknown female protestor shouted something which could have been interpreted as a threat from the crowd. No reasonable jury could conclude that Olsten's adverse action was motivated by De Mian because there is no evidence that De Mian was targeted by him. Other judges in this District have come to the same conclusion with respect to similarly situated protesters in De Mian's position. *See, e.g.*, *Brown v. City of St. Louis, Missouri*, No. 4:18 CV 1676 JMB, 2022 WL 1501368, at *4 (E.D. Mo. May 12, 2022); *Franks v. City of St. Louis, Missouri*, No. 4:19 CV 2663 RWS, 2022 WL 1062035, at *6 (E.D. Mo. Apr. 8, 2022); *but see Brandy v. City of St. Louis, Missouri*, No. 4:18CV1674 JCH, 2022 WL 1604570, at *6 (E.D. Mo. May 20, 2022) (holding that questions of fact precluded summary judgment or qualified immunity with respect to Olsten's deployment of pepper spray against Brandy). As such, Olsten is entitled to summary judgment on De Mian's First Amendment retaliation claim against him.

**2. Hayden**

At the time of these events, Hayden was the scene commander, and highest ranking officer on scene. "[T]o maintain an action for training or supervisory liability, a plaintiff must show the failure to train or supervise caused the injury." *Moore v. City of Desloge*, 647 F.3d 841, 849 (8th Cir. 2011). Where, as here, a plaintiff cannot show a violation of their constitutional rights, they cannot maintain an action for supervisory liability. *Id*. For this reason alone, De Mian's First Amendment claim against Hayden fails.

Further, Hayden argues that he is entitled to summary judgment on De Mian's retaliation claim because he was not personally involved in the incident. "Section 1983 liability cannot attach to a supervisor merely because a subordinate violated someone's constitutional rights." *Otey v. Marshall*, 121 F.3d 1150, 1155 (8th Cir. 1997) (citation omitted). Each officer, "his or her title notwithstanding, is only liable for his or her own misconduct." *Parrish v. Ball*, 594 F.3d 993, 1001 (8th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009)). A supervisor may be held liable for an inferior officer's constitutional violation only "if he directly participated in the constitutional violation, or if his failure to train or supervise the offending actor caused the deprivation." *Id.* (quoting *Otey*, 121 F.3d at 1155).

De Mian has presented no evidence that Hayden was personally involved in the incident; nor has she provided any evidence that Hayden was aware of a pattern of unconstitutional acts by subordinates. Instead, she focuses solely on Hayden's presence at the protest. Because De Mian has not shown that Hayden had notice or personal involvement, he is entitled to summary judgment on her failure to supervise claim.

**Fourth Amendment Excessive Force**

Olsten argues that he is entitled to qualified immunity on De Mian's Fourth Amendment excessive force claim against him, Count VII. Excessive force claims are analyzed in the context of seizures under the Fourth Amendment. *Brown v. City of Golden Valley*, 574 F.3d 491, 496 (8th Cir. 2009). To establish a Fourth Amendment violation, "the claimant must demonstrate a seizure occurred and the seizure was unreasonable." *Quraishi*, 986 F.3d at 839 (quoting *McCoy v. City of Monticello*, 342

11

F.3d 842, 846 (8th Cir. 2003) ("McCoy I"). A seizure occurs when an officer "restrains the liberty of an individual through physical force or show of authority." *Id*. (internal quotation marks and citation omitted). An officer's use of force or show of authority must have been such that "a reasonable person would have believed that [she] was not free to leave." *Id*. (quoting *United States v. Mendenhall*, 446 U.S. 544, 554 (1980)). In determining whether a seizure occurred through a use of force, "the appropriate inquiry is whether the challenged conduct objectively manifests an intent to restrain." *Torres v. Madrid*, 141 S.Ct. 989, 998 (2021).

De Mian argues that it was clearly established at the time of the incident that Olsten's actions violated the Fourth Amendment. None of the cases cited by De Mian, however, establish that the use of pepper spray, with nothing more, constitutes a seizure. *See Burnikel v. Fong*, 886 F.3d 706, 712 (8th Cir. 2018) (plaintiff was pepper sprayed, fell to the ground, was repeatedly struck by officers, and arrested); *Wilson v. Lamp*, 901 F.3d 981, 990 (8th Cir. 2018) (finding an officer's use of force against a detained suspect who is not a threat or resisting arrest is unreasonable); *Tatum v. Robinson*, 858 F.3d 544, 550 (8th Cir. 2017) (officers told the plaintiff he was under arrest and immediately used pepper spray to compel him to comply with commands); *City of Golden Valley*, 574 F.3d at 500 (officers placed the plaintiff under arrest and used a taser on him); *Henderson v. Munn*, 439 F.3d 497, 503 (8th Cir. 2006) (right to be free from excessive force during an arrest is clearly established); *Treats v. Morgan*, 308 F.3d 868, 875 (8th Cir. 2002) (finding "clearly established that correctional officers do not have a blank check to use force whenever a prisoner is being difficult").

12

The record does not support a finding that De Mian was seized. There is no evidence that Olsten ordered De Mian to remain in place or that she was unable to leave at any point. She was not arrested or detained, and no officer made any attempt to arrest or detain her. It was not clearly established at the time that deploying pepper spray against individuals who are free to leave constitutes a seizure for the purposes of the Fourth Amendment. *Quraishi*, 986 F.3d at 840. As such, Olsten is entitled to qualified immunity on De Mian's Fourth Amendment claim. *See Brown*, 2022 WL 1501368, at *5; *Franks*, 2022 WL 1062035, at *8; *Brandy*, 2022 WL 1604570, at *8 (all holding the same on similar facts).

**Municipal Liability**

In Count III, De Mian claims the City is liable because it had an official policy or custom of using excessive force against protestors. The City argues that De Mian's municipal liability claim must fail because there is no underlying constitutional violation. Under *Monell v. Department. of Social Services*, 436 U.S. 658 (1978), "[s]ection 1983 liability for a constitutional violation may attach to a municipality if the violation resulted from . . . an 'official municipal policy.'" *Corwin v. City of Independence*, 829 F.3d 695, 699 (8th Cir. 2016) (quoting *Monell*, 436 U.S. at 691). "[A]bsent a constitutional violation by a city employee, there can be no § 1983 or *Monell* liability for the City." *Whitney v. City of St. Louis*, 887 F.3d 857, 861 (8th Cir. 2018). *See also McCoy v. Monticello*, 411 F.3d 920, 922-23 (8th Cir. 2005) ("McCoy II") ("[I]n order for municipal liability to attach, individual liability first must be found on an underlying substantive

13

claim."). De Mian's claims for individual liability against Olsten and Hayden fail. As such, she cannot state a claim for municipal liability.

**<u>Conspiracy</u>**

De Mian alleges the City, Olsten, and Hayden conspired to violate her civil rights by pepper spraying her. Defendants argue that they are entitled to summary judgment on De Mian's civil conspiracy claim because her claim is barred by the intracorporate conspiracy doctrine, there is no evidence to demonstrate that there was an agreement between the Defendants, and there are no underlying constitutional claims. De Mian's responsive briefs do not address her conspiracy claim.

As an initial matter, De Mian cannot prove a conspiracy claim against the Defendants because they are entitled to summary judgment on her underlying constitutional claims in Counts I and VII. In the absence of a constitutional violation, there is no actionable conspiracy claim. *See Cook v. Tadros*, 312 F.3d 386, 388–89 (8th Cir. 2002).

In any event, De Mian's conspiracy claim would fail because she has not shown that the Defendants reached an agreement. In order to prove a § 1983 conspiracy claim, De Mian "must allege with particularity and specifically demonstrate with material facts that the defendants reached an agreement." *Bonenberger v. St. Louis Metro. Police Dept.*, 810 F.3d 1103, 1109 (8th Cir. 2016) (quoting *City of Omaha Emps. Betterment Ass'n v. City of Omaha*, 883 F.2d 650, 652 (8th Cir. 1989). In her responsive brief, De Mian does not claim that the Defendants had an agreement to violate her civil rights, nor has she alleged any facts which would suggest that the Defendants had reached such an

14

agreement. De Mian claims that "[d]espite no order to deploy pepper spray from his superior," Olsten sprayed his pepper spray at the protestors. (Doc. No. 110 at 3). Moreover, the video establishes that Hayden was facing away from Olsten when Olsten deployed the pepper spray.

De Mian has pointed to no facts showing Defendants reached an agreement to pepper spray the protestors. Instead, the facts show that Olsten decided to pepper spray the protestors without Hayden's direction. Accordingly, the Defendants are entitled to summary judgment on De Mian's conspiracy claim, and the Court need not reach the parties' arguments with respect to the intracorporate conspiracy doctrine.

**State Law Claims**

De Mian raises state law claims of assault (Count IV), intentional infliction of emotional distress (Count V), negligent infliction of emotional distress (Count VI), battery (Count VIII), and malicious trespass (Count IX). These claims are before the Court based on supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a). If a court has dismissed all claims giving rise to original jurisdiction, it "may decline to exercise supplemental jurisdiction." 28 U.S.C. § 1367(c). "[W]hen a district court has dismissed every federal claim, as here, 'judicial economy, convenience, fairness, and comity' will usually 'point toward declining to exercise jurisdiction over the remaining state-law claims.'" *McManemy v. Tierney*, 970 F.3d 1034, 1040–41 (8th Cir. 2020) (quoting *Wilson v. Miller*, 821 F.3d 963, 970–71 (8th Cir. 2016)). The Court has reviewed De Mian's state-law claims and the relevant factors and finds no compelling reason to

15

exercise supplemental jurisdiction in this matter. Therefore, the Court will decline to exercise supplemental jurisdiction over De Mian's remaining state law claims.

**Olsten's Crossclaim**

Olsten raises one crossclaim against the City alleging he is entitled to all expenses and attorneys' fees he incurred in defending this matter and for the payment of any judgment or costs awarded to De Mian. (Doc. No. 88). The claim is premised upon City of St. Louis Ordinance § 3.10.040(H), St. Louis Metropolitan Police Department Special Order 3-05, § XXII(A), and Missouri Statute § 590.502(7), which was recently enacted in 2021. The City moved to dismiss the crossclaim, arguing that the Court should abstain from deciding the claim as it raises novel and complex issues of state law.

Section 590.502(7) provides that:

> Employers shall defend and indemnify law enforcement officers from and against civil claims made against them in their official and individual capacities if the alleged conduct arose in the course and scope of their obligations and duties as law enforcement officers. This includes any actions taken off duty if such actions were taken under color of law. In the event the law enforcement officer is convicted of, or pleads guilty to, criminal charges arising out of the same conduct, the employer shall no longer be obligated to defend and indemnify the officer in connection with related civil claims.

Olsten was indicted for deploying his pepper spray at the protestors, but was acquitted of the charges. The City argues that § 590.502(7) violates the Missouri constitution for a number of reasons and notes that there is currently a case pending in the Circuit Court of Cole County in which it raises similar arguments. *See City of St. Louis v. State of Missouri*, 21AC-CC00466. The issues Olsten's crossclaim raise are novel and complex issues of state law that have not yet been interpreted by Missouri appellate

16

courts. *See Fielder v. Credit Acceptance Corp.*, 188 F.3d 1031, 1038 (8th Cir. 1999) ("These are novel, complex, and important issues of state law on which the Missouri appellate courts have given us little or no prior guidance. Thus, they are precisely the types of issues as to which federal courts should hesitate to exercise § 1367 supplemental jurisdiction."). As such, the Court will decline to exercise supplemental jurisdiction over the crossclaim pursuant to 28 U.S.C. § 1367(c)(1).

**Conclusion**

For the reasons stated above, Defendants' motions for summary judgment will be granted in part and denied in part without prejudice. The motions will be granted with respect to De Mian's federal law claims in Counts I, II, III, and VII and denied without prejudice in all other respects. De Mian's federal law claims will be dismissed with prejudice. The Court will decline to exercise supplemental jurisdiction over De Mian's state law claims in in Counts IV, V, VI, VIII, and IX pursuant to 28 U.S.C. § 1367(c). Those claims will be dismissed without prejudice. The Court will also grant the City's motion to dismiss Olsten's crossclaim without prejudice.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant/Cross-Claimant William Olsten's Motion for Summary Judgment is **GRANTED** in part and **DENIED** in part without prejudice. The motion is granted as to Plaintiff Heather De Mian's federal law claims against Olsten in Counts I, II, and VII. These claims are **DISMISSED** with prejudice. The motion is denied without prejudice in all other respects. (Doc. No. 91).

17

**IT IS FURTHER ORDERED** that Defendant/Cross-Defendant City of St. Louis Missouri and John Hayden's motion for summary judgment is **GRANTED** in part and **DENIED** in part without prejudice.  The motion is granted as to Plaintiff Heather De Mian's federal law claims against Hayden and the City in Counts I, II, and III.  These claims are **DISMISSED** with prejudice.  The motion is denied without prejudice in all other respects.  (Doc. No. 94).

**IT IS FURTHER ORDERED** that Defendant/Cross-Defendant City of St. Louis Missouri's Motion to Dismiss is **GRANTED**.  Defendant/Cross Claimant William Olsten's Crossclaim is **DISMISSED without prejudice**.  (Doc. No. 100).

**IT IS FURTHER ORDERED** that Plaintiff's remaining state law claims, Counts IV, V, VI, VIII, and IX are **DISMISSED without prejudice**.

**IT IS FURTHER ORDERED** that Defendants' Motion for Leave to File Exhibits Under Seal (filed regarding Exhibit R), as to which no objection has been filed, is **GRANTED**.  (Doc. No. 119).

A separate Judgment in accordance with this Memorandum and Order is entered this same date.

_____
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 6th day of September, 2022.

18